UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 10-10003-CR-MARTINEZ

UNITED STATES OF AMERICA,

      Plaintiff,

v.

GILBERT SUAREZ,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

On or about December 22, 2011, court-appointed defense counsel Edward J. O'Donnell, IV ("Counsel") submitted a voucher application numbered FLS 10 5091 with appended time sheets requesting $60,358.82 as final payment for attorney's fees and costs pursuant to the Criminal Justice Act (the "CJA"). Counsel also supplied time sheets and a letter memorandum dated March 18, 2011 (the "Letter Memorandum") in support of his voucher application. Counsel represented Defendant Gilbert Suarez ("Defendant") for just over six (6) months from his appointment on March 9, 2010 until Defendant's acquittal on December 17, 2010.

Counsel seeks $60,358.82 in his application, an amount which exceeds the $9,700.00 statutory maximum allowed for representation in non-capital felony cases under the CJA.[1] As a result, United States District Court Judge Jose E. Martinez entered an Order of Reference **[DE # 223]** referring the voucher application to the undersigned for a Report

---

[1]

Pro bono co-counsel for Defendant, William Roppollo, also submitted an email letter in support of Counsel's request for compensation in excess of the $9,700.00 maximum.

and Recommendation as to whether the fees requested by Counsel are appropriate. *See* 28 U.S.C. § 636(a)*; see also* United States District Court for the Southern District of Florida Magistrate Judge Rules.

### Criminal Justice Act and Guidelines for Administering the Criminal Justice Act

The United States Judicial Conference developed the Guidelines for Administering the CJA and Related Statutes (the "Guidelines") to assist courts in the application of the provisions of the CJA. *See In re Burger,* 498 U.S. 233, 234, 111 S.Ct. 628 (1991). In the Guidelines, judges are "urged to compensate counsel at a rate and in an amount sufficient to cover appointed counsel's general office overhead and to ensure adequate compensation for representation provided." *See* Section §630.20 of the Guidelines.

The CJA at 18 U.S.C. §3006A(d)(1) provides that at the conclusion of CJA representation, an appointed attorney shall be compensated for time expended in court and for time "reasonably expended out of court" and shall be reimbursed "for expenses reasonably incurred." The district court, as the body empowered to "fix" CJA appointed counsel compensation, has the statutory authority and discretion to determine what is a reasonable expense or a reasonable use of billable time. 18 U.S.C. §3006A(d)(5); *U.S. v. Griggs,* 240 F.3d 974 (11th Cir. 2001). In order for the recommended fee amount to exceed the statutory maximum, however, the district court *must* first certify that the case involves "complex" or "extended" representation. 18 U.S.C. §3006A(d)(3). Second, the district court must conclude that the amount is necessary to provide Counsel with fair compensation.

-2-

A case may be considered "complex" if the legal or factual issues in a case are unusual, thus requiring the expenditure of more time, skill and effort by the lawyer than would normally be required in an average case. *See* Section §230.23.40(b) of the Guidelines. A case may be considered "extended" if more time is reasonably required for total processing than the average case, including pre-trial and post-trial hearings. *Id.*

## DISCUSSION

### Counsel's Representation in This Case Was Complex

Under the Guidelines, in order to approve compensation in an amount in excess of the statutory maximum, I must first find that the representation was either complex or extended. Counsel's representation of Defendant was complex for several reasons.

First, the very nature and number of charges involving Defendant required Counsel to expend more time, skill and effort than normally required in the average case. The case charged four (4) individuals with conspiracy to defraud the government with respect to tax claims as well as substantive tax fraud in violation of 18 U.S.C. §§ 286 & 287. The grand jury returned an Indictment **[DE # 3]** in this matter on February 25, 2010.

The Indictment contained fifteen (15) counts. The government alleged that Defendant and three codefendants were involved in a tax fraud conspiracy scheme to prepare and file false and fraudulent income tax returns. The purpose of the scheme was to obtain tax refunds from the Internal Revenue Service ("IRS") by filing false tax returns on behalf of numerous individuals who were claiming tax refunds to which they were not entitled.

-3-

The scheme involved Defendant's brother and codefendant, Danilo Suarez, who was incarcerated awaiting sentencing on other charges, recruiting fellow inmates, former inmates and family members, to submit the false tax returns to the IRS for refunds. The false returns were filed for the tax years 2004, 2005 and 2006. The false returns contained fictitious information concerning taxpayer employment, income and federal withholdings. Codefendant Danilo Suarez falsified the addresses of the purported taxpayers to reflect addresses belonging to relatives and acquaintances in order to disguise the fact that many of the tax returns were being submitted by prison inmates. The government paid thousands of dollars in fraudulent tax refunds as a result of the scheme.

In Count I of the Indictment, the government charged Defendant with conspiracy to defraud the government. Defendant faced a maximum sentence of ten (10) years imprisonment for Count I. In Counts VIII, IX and XV of the Indictment, the government charged Defendant with filing fraudulent tax returns. Defendant faced a maximum sentence of five (5) years for each of these three counts.

Second, the discovery in this matter was voluminous. In the "initial discovery, [the government] provided 748 recorded calls which comprised approximately 72 hours of conversation. To complicate matters, the calls from the Stock Island jail, were not identified by date. It took [Counsel] the entire discovery process and filing motions to finally understand what had happened to the dates. On the eve of trial, the government conceded that some calls had been completely erased and the date stamp on many had been lost . . . . Because of this, [Counsel] had to try and create a timeline as to when certain calls were made to put them into context." (Letter Memorandum at 2).

-4-

In total, this case required Counsel to listen to "hundreds of hours of jail recordings" "from March 2007 through November 2010." (Letter Memorandum at 1). Counsel had to listen to many hours of the tapes with Defendant, who was also incarcerated. (Letter Memorandum at 3-4). As Defendant was incarcerated in Key West, Counsel "visited [Defendant] six times to listen to the tapes, interview witnesses and prepare for defending him in trial. [Counsel's] office is in Miami. Each trip was approximately 3 days long." (Letter Memorandum at 4).

Counsel's investigation revealed that codefendant Danilo Suarez "was going to be the star witness against [Defendant]. Because of this, [Counsel] did an extensive investigation of Danilo Suarez in order to prepare to cross examine him at trial. [Counsel] interviewed witnesses in preparation to discredit him including his own mother. Danilo Suarez has an extensive criminal background which [Counsel] investigated." (Letter Memorandum at 4). Later, when the government decided that it "was no longer going to call Danilo Suarez as their main witness but was going to call Sandra Suarez[,] . . . Sandra Suarez now had to be investigated." (Letter Memorandum at 4). The sheer volume of documents, recordings and investigative materials which Counsel had to review in order to effectively represent Defendant rendered this case more complex than the average case.

Third, the representation of Defendant required Counsel to attend a number of hearings and status conferences in this case. Plaintiff made appearances at an arraignment proceeding (3/10/10) and two hearings on legal issues (10/19/10 and 10/28/10). Counsel argued at these hearings in addition to appearing at a number of status conferences (9/1/10, 11/29/10, 12/3/10 and 12/10/10).

Fourth, this case was more complex than the average case because Defendant pled not guilty and proceeded to trial. The trial lasted four (4) days. The jury acquitted Defendant on all charges. **[See DE # 204 & 205]**.

Fifth, this case was rendered more complex because of the family connections between many of the defendants. Codefendant Danilo Suarez was Defendant's brother. Codefendant Belkis Mendez was the sister of Defendant and codefendant Danilo Suarez. Lastly, codefendant Sandra Suarez was the niece of Defendant and codefendant Belkis Mendez and the daughter of codefendant Danilo Suarez. A number of the witnesses in this case were also family members. The fact that the codefendants and witnesses were family members made this case undoubtedly more complex.

Sixth, Counsel engaged in extensive motion practice in this case. Counsel filed numerous motions to compel **[DE # 99 & 100]**, a complicated motion to change venue **[DE # 111 & 112]** and a motion in limine regarding prejudicial evidence **[DE # 168]**. Further, the government also filed a number of motions in this case, which required additional responsive pleadings from Counsel.

Seventh, Counsel engaged in a significant amount of travel time. Counsel incurred 72.4 hours of travel time. Although Counsel's office is in Miami, Florida, the trial and court proceedings in this matter took place in Key West. Furthermore, Defendant was incarcerated in Key West which required Counsel to travel to Key West for all client meetings as well as witness interviews.

It is clear from the record that the legal and factual issues faced by Counsel in this case were unusual. Consequently, I conclude that Counsel's representation of Defendant in this matter required the expenditure of more time, skill and effort by Counsel than would normally be required in the average case. As I have concluded that the representation provided by Counsel was complex, I must review the voucher to determine the appropriate amount for which Counsel should be compensated in excess of the $9,700.00 statutory maximum.

### Voucher Amount - Administrator's Review

The Court's CJA administrator first reviewed the voucher for compliance with the Guidelines and mathematical accuracy prior to my review. Counsel requested compensation for 31.0 in-court hours totaling $3,875.00. The CJA administrator made changes to the in-court hours listed in the voucher.

The CJA administrator increased the amount of time Counsel allocated to the category "Motion Hearings" by 0.8 hours. This small change brought a slight increase for the total compensation Counsel sought for in-court hours from $3,875.00 to $3,975.00.

The CJA administrator also reviewed the 414.20 out-of-court hours sought by Counsel. Counsel sought compensation for 75.3 hours for "Interviews and conferences" and 215.30 hours for "Obtaining and reviewing records." Counsel also sought compensation for 36.30 hours for "Legal research and brief writing" and 72.4 hours of "Travel time." Lastly, Counsel seeks 14.9 hours of compensation for "Investigative and Other work."

-7-

The CJA administrator slightly increased the number of hours sought by Counsel for "Interviews and conferences" to 84.3 hours. The CJA administrator therefore adjusted the total number of out-of-court hours to 423.2 from 414.20 and the total amount Counsel sought for out-of-court hours to $52,900.00 from $51,775.00.

Counsel also sought $3,042.89 in "Travel Expenses". The CJA administrator slightly increased this figure to $3,045.39. Counsel also sought $1,665.93, a figure which the CJA administrator did not change. After making the small adjustments described above, the CJA administrator concluded that the overall total amount documented by Counsel in the voucher increased slightly from $60,358.82 to $61,586.32.

## In-Court Hours[2]

Counsel originally sought 31.0 in-court hours totaling $3,875.00. Again, the CJA administrator slightly increased this figure to $3,975.00 to reflect a small increase in the number of hours sought in the "Motion Hearings" category (from 3.5 hours to 4.3 hours). I approve the CJA administrator's change and total amount of $3,975.00 as reasonable.

## Out-of-Court Hours

In the voucher, Counsel sought compensation for a total of 414.20 out-of-court hours. The CJA administrator reviewed the voucher and slightly increased the total number of out-of-court hours to 423.2 for a total of $52,900.00 (from $51,775.00).

---

2

The undersigned defers to the Court Clerk to verify all in-court time and expense allowances.

Although the vast majority of Counsel's time entries are appropriate, Counsel included some entries that were not sufficiently specific for the undersigned to determine the purpose of the entries. Following submission of his voucher, I met with Counsel on March 29, 2011 and asked him to explain these entries. Counsel was able to clarify some of the questionable entries. A few of the troublesome entries remain, however, and I recommend that the time listed for these entries below be eliminated (problem entries are italicized):

| 9/29/10 | review order, *conf re legal* | 0.3 hours |
| 10/18/10 | review govt motions, review govt motions, *conf w/ counsel*, prepare for hearing | 0.5 hours |
| 10/19/10 | review docs re mtn, mtns, review subp, review disc notes, *conf w/counsel in KW* | 0.9 hours |

I recommend that the above entries be eliminated because it is not possible for the undersigned to determine with whom Counsel conferred or what was discussed. As a result, it is not possible for the Court to determine if these entries reflect an appropriate use of billable time. I also recommend that the following entries be reduced (problem entries in italics):

| 3/30/10 | listen to discs; *phone conf w/ co-D counsel* | 0.2 hours [reduce to 0.1 hour] |
| 3/31/10 | review corres co-D counsel *& phone conf with* | 0.2 hours [reduce to 0.1 hour] |
| 4/21/10 | *ph conf w/co-counsel* | 0.2 hours [reduce to 0.1 hour] |

| 5/3/10 | listen to discs, *phone conf w/family co-counsel phone conf.* | 0.8 hours [reduce to 0.2 hours] |
|---|---|---|
| 5/22/10 | *phone conf w/co-D counsel* | 1.0 hour [reduce to 0.1 hour] |
| 6/23/10 | read corresp from witness; *ph conf,* conf w/co-D counsel | 0.4 hours [reduce to 0.2 hours] |
| 6/24/10 | *phone conf w/ inv, witness* | 0.4 hours [reduce to 0.2 hours] |
| 6/26/10 | *phone conf w/witness* | 0.2 hours [reduce to 0.1 hour] |
| 8/20/10 | investigative memo, review corres-pondence BOP, *conf call w/AUSA, conf call co-D atty* | 1.3 hours [reduce to 0.2 hours] |
| 8/26/10 | review disc docs, interview witness, pick up docs, *ph conf w/AUSA, co-def* | 1.9 hours [reduce to 0.1 hour] |
| 8/27/10 | conf w/AUSA & *ph conf w/co-D counsel* | 1.5 hours [reduce to 0.2 hours] |
| 9/1/10 | status conference, research re rule 16, 17, *phone conf w/co-D atty re: his plea; ph conf w/BOP atty* | 1.2 hours [reduce to 0.7 hours] |
| 11/30/10 | review discs & notes for transcription *phone conf w/AUSA* | 0.3 hours [reduce to 0.1 hour] |
| 12/11/10 | research hearsay & exceptions, *phone conf w/ AUSA & co-counsel,* review transcripts, prepare X | *0.3 hours* [reduce to 0.1 hour] |

I recommend that the italicized portions of the entries above be reduced because these entries are also insufficiently detailed. The Supplemental Instructions make clear that "[t]elephone conferences in excess of one tenth (0.1) hour require notation of reason for duration, and parties to conversation identified." Although Counsel identified the parties to

the conversations, Counsel failed to explain the reason for the duration of these telephone conferences. Accordingly, I recommend that Counsel should not be compensated for the italicized entries which amounts to a reduction of $1,137.50.

I find, however, that the remaining out-of-court hours listed in the voucher application are appropriate. Factoring in my deductions, I recommend that Counsel should be paid $51,762.50 for his out-of-court hours.

In making this recommendation, I have been mindful that when considering awards to Counsel under the CJA, courts have long recognized that there is an inherent tension between the policies underlying the CJA: "[o]n the one hand, representing indigent defendants is a form of public service; thus, the [CJA] was never intended to provide full compensation for an attorney's services or to provide fees equal to those charged in private practice. . . . On the other hand, the Act was also intended to provide indigent defendants with meaningful representation by competent counsel". *United States v. Mukhtaar,* 2008 WL 2151798, at * 2 (S.D. N.Y. May 21, 2008) (citations omitted).   As other courts have explained, the CJA "was intended to partially alleviate the financial burden associated with provision of these services which had been traditionally provided pro bono. The spirit of the statute is lost once the CJA representation of indigent defendants loses its essentially pro bono nature." *United States v. Diaz*, 802 F.Supp. 304, 307 (C.D. Cal. 1992) (quoting *United States v. Carnevale*, 624 F.Supp. 381, 383 (D. R.I. 1985)). In considering these principles with respect to the instant case, I conclude that an award of $51,762.50 for out-of-court hours, is fair, although admittedly not full compensation for Counsel's services.

-11-

#### Expenses

Counsel sought $3,042.89 in "Travel Expenses." The CJA administrator slightly increased the amount claimed to $3,045.39. I hereby recommend approval of this increased amount. Counsel also sought $1,665.93 in "Other Expenses." The CJA administrator did not make any changes to this amount and I hereby recommend payment of the amount of $1,665.93 as requested by Counsel.

#### CONCLUSION

I commend Counsel for his professionalism and willingness to take this appointment; the undersigned is appreciative of his efforts. Notwithstanding this appreciation, as I have often quoted, when appropriate and in the spirit of the CJA: "What is commendable, however, is not necessarily compensable." *U.S. v. Smith,* 76 F.Supp.2d 767, 769 (S.D. Texas 1999). It is with this sentiment in mind that I recommend that some of the time incurred by Counsel be considered non-reimbursable.

To be clear, I am not making this recommendation for a lack of appreciation, rather, it is because the courts have the inherent obligation to ensure that claims for taxpayer provided monies are properly spent. Accordingly, I am constricted by the rules established in the Guidelines and in the Supplemental Instructions in awarding Counsel full compensation for all time incurred in this matter.

-12-

As I explained above, however, because the representation provided by Counsel to Defendant in this case was complex, I recommend that Counsel be reimbursed for an amount in excess of the statutory maximum of $9,700.00 in this case. Based upon my review of the time sheets, the March 18, 2011 Letter of Explanation, the docket and filings in this case, I RECOMMEND that Counsel be paid $60,449.32 as fair and final compensation for his work in this case.

In accordance with 28 U.S.C. §636(b)(1), the parties shall have fourteen (14) days from receipt of this Report and Recommendation to serve and file any written objections with the Honorable Jose E. Martinez, United States District Judge.

Signed this ___ day of April, 2011.

**PETER R. PALERMO**
**SR. UNITED STATES MAGISTRATE JUDGE**

Copies furnished to:
      Edward J. O'Donnell IV, Esq.
      Lucy Lara, CJA administrator